**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION**

| | |
|---|---|
| Dakota Gasification Company, ) | |
| ) | **ORDER GRANTING THE** |
| Plaintiff, ) | **PLAINTIFF'S MOTION FOR** |
| ) | **SUMMARY JUDGMENT** |
| vs. ) | |
| ) | Case No. 1:10-cv-015 |
| Don Didion, II, d/b/a Didion's Mechanical, ) | |
| ) | |
| Defendant. ) | |
| ) | |

___

Before the Court is the Plaintiff's motion for summary judgment filed on May 2, 2011. See Docket No. 31. The Defendant filed a response in opposition to the motion on June 17, 2011. See Docket No. 37. The Plaintiff filed a reply brief on June 29, 2011. See Docket No. 38. For the reasons set forth below, the Plaintiff's motion is granted.

## I.  BACKGROUND

The plaintiff, Dakota Gasification Company ("DGC"), is a wholly-owned subsidiary of Basin Electric Power Cooperative and owns and operates the Great Plains Synfuels Plant located near Beulah, North Dakota. On August 27, 2008, DGC entered into a contract with Didion's Mechanical, a sole proprietorship located in Bellevue, Ohio and owned by the defendant, Don Didion, II, for the construction of three phenosolvan vessels. See Docket No. 33-1. The contract states that the "[v]essels shall be ready for delivery No Later than May 1, 2009." See Docket No. 33-1, p. 4. Paragraph 8 of the contract provides, "Time of delivery is of the essence of this Agreement." See Docket No. 33-1, p. 9.

On November 21, 2008, the parties agreed to Change Order No. 01, which required Didion to construct three additional vessels. See Docket No. 33-2, p. 1. The date by which the vessels were to be ready for delivery remained May 1, 2009. On December 22, 2008, the parties entered into Change Order No. 02, which provides:

- Company agrees to have Units "Ready to Ship" no later than

    - June 1, 2009 for Unit 1631
    - June 8, 2009 for Unit 1633
    - June 15, 2009 for Units 1635, 1617, 1647, and 1649. Owner will accept early delivery of all units if possible.

See Docket No. 33-3.

On May 6, 2009, Jon Klein, Contract Administrator for Basin Electric Power Cooperative, indicated in an e-mail that he had communicated with Don Didion and was informed that Didion's Mechanical was "a few days behind at this point, but have been working two 10 hour shifts to maintain the original schedule." See Docket No. 33-5. During the week of May 11, 2009, Klein and Ron Webb of DGC visited Didion's job site in Ohio and it was clear the company was far behind schedule. Didion informed Klein during this visit that he would not be able to meet the contract deadlines and it would be around October 2009 before the fabrication process would be complete. On May 14, 2009, Didion outlined new proposed completion dates and a request for additional money to complete the fabrication:

> HERE IS THE REVISED REQUESTED SCHEDULE DURING YOUR & RON'S VISIT.
>
> VESSEL #:      SHIP DATE:
> FA-1631        07-03-2009
> FA-1633        07-31-2009
> FA-1635        08-23-2009

> TO ACHIEVE THESE DATES WE WILL BE WORKING 7 DAYS A WEEK AROUND THE CLOCK
>
> EXTRA COST ABOVE CONTRACT:
> $332,480.00
>
> . . . .
>
> KEEP ON CURRENT WORK SCHEDULE:
> SCHEDULE WE GAVE YOU DURING MEETING COULD BE IMPROVED BY 12 DAYS PER RON'S DISCUSSION ON P.W.H.T. THAT WOULD PUT THE LAST VESSEL FA-1635 OUT THE DOOR ON OCTOBER 05, 2009.

See Docket No. 33-9 (capitals in original).

Shortly thereafter, DGC entered into a contract with Arrow Tank & Engineering Company in Cambridge, Minnesota to build the phenosolvan vessels that were orginally intended to be constructed by Didion's Mechanical. See Docket No. 33-10. This contract went into effect on June 3, 2009. The vessels were to be delivered by Arrow Tank & Engineering by July 31, 2009, and August 21, 2009. See Docket No. 33-10, p. 3.

On October 2, 2009, Mark D. Foss, DGC's general counsel, sent a letter to Didion providing notice that Didion was in default of the contract and alleging that Didion had fraudulently misrepresented the progress Didion's Mechanical had made on constructing the phenosolvan vessels. See Docket No. 33-14. DGC informed Didion that it had incurred $848,610.20 in costs as a result of Didion's default. It is important to note that DGC had previously paid Didion $1,465,477.51 under the contract. Foss explained:

> As a result of these misrepresentations, Dakota Gasification Company paid $633,000 to Didion to which Didion was not entitled representing the difference between the value of the work completed ($832,500) and the dollar amounts paid by Dakota Gasification Company ($1,465,477.51) as a result of Didion's fraudulent misrepresentation. Dakota Gasification Company demands repayment of these

3

overpayments to Didion as well. Thus, our collective claim for damages is for $1,481,610.20.

See Docket No. 33-14.

Paragraph 12 of the contract between DGC and Didion's Mechanical provides the measure of damages for default:

> In the event Seller shall be adjudged a bankrupt, make a general assignment for the benefit of its creditors or if a receiver shall be appointed on account of Seller's insolvency or in the event the Seller does not correct or, if immediate correction is not possible, commence and diligently continue action to correct, any default of Seller to comply with any of the provisions or requirements of this Agreement within ten (10) days after receipt in writing of notice of such default by Purchaser, Purchaser may, by written notice to Seller, without prejudice to any other rights or remedies which Purchaser may have at law or in equity, terminate further performance by Seller of this Agreement. In the event of termination, Seller shall promptly deliver to the Purchaser all work product, finished or unfinished, or make disposition as otherwise directed by the purchase. <u>Purchaser may complete the performance of this Agreement by such means as Purchaser reasonably selects and Seller shall be responsible for any additional costs incurred by Purchaser in so doing</u>. Any amounts due Seller or goods delivered by Seller in compliance with the terms of this Agreement prior to such termination for default, shall be subject to a set off of Purchaser's additional cost of completing the Agreement and other damages incurred by Purchaser as a result of Sellers's default.

See Docket No. 33-1, p. 10 (emphasis added).

On March 5, 2010, DGC filed a complaint alleging Didion breached the contract with DGC. See Docket No. 1. On April 5, 2010, Didion filed a pro se answer and counterclaim. See Docket No. 6. Didion asserts that he would have delivered the vessels earlier than DGC actually received them from Arrow Tank & Engineering, thus he should not be liable for DGC's additional costs. Didion also asserts that the contract should not be enforced because it "does not fully protect the rights of Didion's Mechanical." See Docket No. 6 (capitals removed). Didion seeks $58,961.05 in damages which is the balance of the amount due on the contract.

On May 2, 2011, DGC filed a motion for summary judgment. See Docket No. 31. DGC asserts that there are no genuine issues of material fact and that it is entitled to damages under the contract in the amount of $848,610.20. DGC also contends that the contract and the change orders were the product of bargaining between the parties, not adhesion contracts. Didion did not submit any affidavits in response to the motion, and he essentially contends that DGC failed to mitigate its damages. Didion argues that it would have been more cost effective for DGC to have allowed him to finish constructing the vessels.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, indicates that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. Davison v. City of Minneapolis, Minn., 490 F.3d 648, 654 (8th Cir. 2007); see Fed. R. Civ. P. 56(c). Summary judgment is not appropriate if there are factual disputes that may affect the outcome of the case under the applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the non-moving party. Id.

The Court must inquire whether the evidence presents a sufficient disagreement to require the submission of the case to a jury or whether the evidence is so one-sided that one party must prevail as a matter of law. Diesel Mach., Inc. v. B.R. Lee Indus., Inc., 418 F.3d 820, 832 (8th Cir. 2005). The moving party bears the burden of demonstrating an absence of a genuine issue of material fact. Simpson v. Des Moines Water Works, 425 F.3d 538, 541 (8th Cir. 2005). The non-

moving party "may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

### III. LEGAL DISCUSSION

DGC contends that there are no genuine issues of material fact in dispute. In his response to the motion, Didion lists a number of "disputed facts." However, Didion does not dispute the actual facts underlying this dispute although his interpretation of those facts differs from that of DGC. Didion essentially contends that he did not profit from the contract (Didion was paid $1.4 million), he wanted to finish constructing the vessels (at an additional cost to DGC of $332,480), and he would have delivered the vessels earlier than they were actually delivered by Arrow Tank & Engineering. It is important to note that Didion, in his submissions to the Court, <u>does not</u> dispute that he breached the contract with DGC. Nor does he provide any evidence to refute the amounts paid by DGC to complete the vessels and fulfill the contract. The Court finds that there are no genuine issues of material fact.

The contract provides, "This Agreement shall be subject to and governed in all respects, including issues of validity, interpretation, performance and enforcement, by the laws of the State of North Dakota." <u>See</u> Docket No. 33-1, p. 12. The North Dakota Supreme Court has explained that the elements of a breach of contract action are "the existence of a contract, a breach of the contract, and damages flowing from the breach of contract. <u>Abdullah v. State</u>, 2009 ND 148, ¶ 13, 771 N.W.2d 246 (citing <u>Van Sickle v. Hallmark & Assocs.</u>, 2008 ND 12, ¶ 11, 744 N.W.2d 532).

6

A.  **EXISTENCE OF A CONTRACT**

The record reveals that DGC and Don Didion entered into a written contract on August 27, 2008 , with two change orders on November 21, 2008, and December 2, 2008.  See Docket Nos. 33-1, 33-2, and 33-3.  All three documents were signed by Didion on behalf of Didion's Mechanical and by Jon Klein on behalf of DGC.  Didion claims the contract should be "null and void," but he does not assert that the contract is unconscionable or the product of fraud.  The Court finds, as a matter of law, that a valid written contract exists between DGC and Didion.

B.  **BREACH OF CONTRACT**

"A breach of contract occurs when there is nonperformance of a contractual duty." Abdullah, 2009 ND 148, ¶ 13, 771 N.W.2d 246 (citing Van Sickle, 2008 ND 12, ¶ 11, 744 N.W.2d 532).  Section 9-01-16 of the North Dakota Century Code codifies the doctrine of anticipatory breach:

> Before any party to an obligation can require another party to perform any act under it, that party shall fulfill all conditions precedent thereto imposed upon that party and must be able, and shall offer, to fulfill all conditions concurrent so imposed upon that party on the like fulfillment by the other party, but if one party to the obligation gives notice to another before the latter is in default that that party will not perform the same upon that party's part and does not retract such notice before the time at which performance upon that party's part is due, such other party is entitled to enforce the obligation without previously performing or offering to perform any conditions upon the other party's part in favor of the former party.

N.D.C.C. § 9-01-16.

Paragraph 8 of the contract states, "Time of delivery is of the essence of this Agreement." See Docket No. 33-1, p. 9.  Change Order No. 02 requires that the vessels be "Ready to Ship" by June 1, 8, and 15, 2009.  See Docket No. 33-3.  While visiting Didion's facility in Ohio during the

week of May 11, 2009, Jon Klein of DGC learned that the vessels would not be ready for shipment on the required dates. In fact, Klein learned that Didion was far behind schedule and the fabrication process would not be completed until October 2009. On May 14, 2009, Didion provided DGC with new proposed dates by which the vessels would be ready to ship which was much later than the specified dates as set forth in the contract. See Docket No. 33-9. The Court finds, as a matter of law, that Didion's notification to DGC that the vessels would not be ready on time constituted an anticipatory breach of the contract.

### C. DAMAGES FLOWING FROM THE BREACH OF CONTRACT

The record reveals that DGC contracted with and ultimately paid Arrow Tank & Engineering $999,788.31 to construct the phenosolvan vessels that DGC had originally ordered from Didion's Mechanical. See Docket No. 33-12. DGC now seeks $848,610.20 in damages. Jon Klein of DGC explained in an affidavit:

> The amount requested from Didion differs from the amount paid to Arrow. It was and is not appropriate to seek from Didion money Arrow was required to expand its furnace for the heat treating required by the very large phenosolvan vessels subject to the contract. In addition, certain aspects of the fabrication at Didion were passed by an Ohio inspector but failed by a Minnesota inspector. Those costs are not the responsibility of Didion. Transport charges from Arrow have also been deducted, as Contract No. 553758 did not make Didion responsible for transport costs.

See Docket No. 33.

Paragraph 12 of the contract provides that, in case of a breach, "Purchaser may complete the performance of this Agreement by such means as Purchaser reasonably selects and Seller shall be responsible for any additional costs incurred by Purchaser in so doing." See Docket No. 33-1, p.

8

10. North Dakota law allows a buyer to "cover" by purchasing substitute goods when a seller repudiates a contract. N.D.C.C. § 41-02-90 provides, in part:

> 1. If the seller fails to make delivery or repudiates or the buyer rightfully rejects or justifiably revokes acceptance then with respect to any goods involved, and with respect to the whole if the breach goes to the whole contract . . . the buyer may cancel and whether or not the buyer has done so may in addition to recovering so much of the price as has been paid:
>
>    a. "Cover" and have damages under the next section as to all the goods affected whether or not they have been identified to the contract.

N.D.C.C. § 41-02-90 (U.C.C. § 2-711). The North Dakota Century Code allows a seller to "cover" as follows:

> 1. After a breach within section 41-02-90, the buyer may "cover" by making in good faith and without unreasonable delay any reasonable purchase of or contract to purchase goods in substitution for those due from the seller.
>
> 2. The buyer may recover from the seller as damages the difference between the cost of cover and the contract price together with any incidental or consequential damages as hereinafter defined . . . but less expenses saved in consequence of the seller's breach.
>
> 3. Failure of the buyer to effect cover within this section does not bar the buyer from any other remedy.

N.D.C.C. § 41-02-91 (U.C.C. § 2-712).

Didion does not dispute the accuracy of the amounts DGC asserts it paid Arrow Tank & Engineering to "cover" for Didion's breach. Didion also does not dispute the fact that Arrow Tank & Engineering completed the fabrication of all six vessels or that DGC paid Arrow Tank & Engineering additional money to complete the vessels. Didion simply contends that DGC failed to mitigate its damages because it would have been less expensive for DGC to have allowed Didion to complete the vessels.

9

The North Dakota Supreme Court has cited the official comment to Section 2-712 of the Uniform Commercial Code which states that "the test of proper cover is whether at the time and place the buyer acted in good faith and in a reasonable manner, and it is immaterial that hindsight may later prove that the method of cover used was not the cheapest or most effective." Dangerfield v. Markel, 278 N.W.2d 364, 369 (N.D. 1979). The North Dakota Supreme Court has also explained, "It is generally accepted that if the buyer complies with the requirements of Section 2-712, U.C.C., his purchase is presumed proper and the burden of proof is on the seller to show that cover was not properly obtained." Red River Commodities v. Eidsness, 459 N.W.2d 811, 817 (N.D. 1990) (citing Dangerfield, 278 N.W.2d at 369).

DGC's decision to contract with and purchase the phenosolvan vessels from Arrow Tank & Engineering is presumed to be proper. Didion has failed sustain his burden of proof and has failed to provide any competent evidence that DGC acted unreasonably or in bad faith. Allowing Didion's Mechanical in Ohio to complete the vessels may arguably have cost less than purchasing the vessels from Arrow Tank & Engineering in Minnesota, but the Court will not force a buyer to continue performing its contract with a seller who was unable to meet its contractual obligations. There is an understandable reluctance among courts to require parties, under the duty to mitigate, to deal further with the breaching party, especially if the breaching party's alternative terms differ substantially from the terms of the original contract. Once Didion breached the contract and it was clear the vessels would never be delivered on time as agreed upon, DGC was not required to simply overlook the breach and agree to extend the deadlines for completion of the vessels, combined with an additional cost of $332,480. DGC had already paid Didion $1.4 million for the phenosolvan vessels that were far from being completed on time. No reasonable businessperson would ever agree

to such a proposal. The Court finds, as a matter of law, that DGC's decision to "cover" by purchasing the phenosolvan vessels from Arrow Tank & Engineering was reasonable and proper and done in good faith. DGC properly and in good faith mitigated its damages and DGC suffered damages in the amount of $848,610.20. There are no genuine issues of material fact that preclude summary judgment on this matter.

## III. CONCLUSION

The Court has carefully considered the entire record, the parties' briefs, and relevant case law. The Court **GRANTS** the Plaintiff's motion for summary judgment (Docket No. 31). The Court **ORDERS** that judgment be entered in favor of the Plaintiff and damages be awarded in the amount of $848,610.20. The Court **DISMISSES** the Defendant's counterclaim with prejudice.

**IT IS SO ORDERED.**

Dated this 15th day of July, 2011.

*/s/ Daniel L. Hovland*
Daniel L. Hovland, District Judge
United States District Court